**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re Application of<br><br>FourWorld Event Opportunities LP,<br><br>Petitioner, for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding. | Case No. 1:25-cv-01457-MN |

**SUPPLEMENTAL DECLARATION OF RASMUS LÜNING
IN FURTHER SUPPORT OF KARO INTRESSENTER AB'S
MOTION FOR A STAY OF THE PROCEEDING OR TO VACATE ORDER
GRANTING SECTION 1782 *EX PARTE* APPLICATION**

1. I, Rasmus Lüning, submit this Supplemental Declaration in further support of Karo Intressenter AB's ("Karo") Motion for a Stay of the Proceeding or to Vacate Order Granting Section 1782 *Ex Parte* Application.

2. White & Case LLP is counsel of record for Karo in the case titled *FourWorld Global Opportunities Fund, Ltd. et al. v. Karo Intressenter AB* (Case No. T 19355-24) ("Swedish Proceeding") pending before the Stockholm District Court ("Swedish Court").

3. In preparing this declaration, I reviewed FourWorld's Answering Brief in Opposition, the Supplemental Declaration of Fletcher W. Strong, the Supplemental Declaration of Christopher Stridh ("Stridh Supplemental Declaration"), and its exhibits, including the exhibits to the Stridh Declaration dated December 2, 2025, that are incorporated by reference.

4. I make this declaration to supplement my March 5, 2026, declaration that was filed with the Court on March 6, and to provide the Court with information on Swedish law and the record of the foreign proceedings before the Swedish arbitration tribunal ("Swedish Tribunal") and those pending before the Swedish Court. I address specific points in the Stridh Supplemental

Declaration that mischaracterize my prior declaration or that raise issues of Swedish law requiring clarification.

5.       I make this declaration based on my personal knowledge and my expertise in Swedish law, except where stated to be on information and belief, and if called as a witness I could competently testify to the matters stated herein.

## I.     THE FOCUS IN A REDEMPTION DISPUTE IS ON THE PROCEEDINGS BEFORE THE SWEDISH TRIBUNAL

6.       In my prior declaration, I stated that while the Swedish Court may consider new evidence and is not legally bound by the Swedish Tribunal's factual findings, the Swedish Supreme Court has held that the focus in a redemption dispute should be on the proceedings before the arbitral tribunal.  Lüning Decl. ¶ 35.  I cited to NJA 2013 s. 1032, a Swedish Supreme Court case in support of that assertion.  *Id.*

7.       Mr. Stridh suggests that my reliance on NJA 2013 s. 1032 misreads that decision, arguing that it concerns only the conditions under which procedural errors in an arbitration may ground an application to set aside an award, and does not establish any limitation on the Swedish Court's power to receive new evidence, order fresh discovery, or depart from the Swedish Tribunal's factual conclusions.  Stridh Supp. Decl. ¶¶ 24–25.  That characterization of the case is accurate as far as it goes.

8.       However, Paragraph 16 of the Supreme Court's reasoning clarifies that the structural rationale for the minority redemption regime, where an arbitral tribunal acts as the court of first instance, is the tribunal's "specific expertise in valuation matters" and then states generally, without confining to the procedural remedy issue before it: "It follows that the focus of a redemption dispute shall lie in the proceedings before the arbitral tribunal."  The premise from

which the principle is derived—the statutory design of the compulsory redemption regime—is therefore not specific to the facts in that case.[1]

9.      My prior declaration remains a correct statement on NJA 2013 s. 1032.  Lüning Decl. ¶ 35.  I did not suggest that the Swedish Court is formally precluded from receiving evidence or legally bound by the Swedish Tribunal's findings of fact.  The Supreme Court's holding is that the primary assessment in a redemption dispute is expected to occur at the arbitral stage, which deploys the specialist expertise the regime requires.  This principle factors into the weight to be given to arguments based on alleged evidentiary deficits in the arbitration or the arbitral tribunal's discovery rulings in assessing what materials were available and considered.

**II.      THE SWEDISH TRIBUNAL APPLIED THE SAME LEGAL STANDARD THAT THE SWEDISH COURT WILL APPLY**

10.      In my prior declaration, I described the procedural standard the Swedish Tribunal applied in ruling on FourWorld's discovery requests and the categories of documents it denied on substantive grounds, including trade secrets, relevance, and proportionality.  *Id.* ¶¶ 29–31.  Mr. Stridh alleges that my prior declaration conflates two questions: (a) the procedural mechanism for compelling document production within Swedish domestic proceedings, and (b) the Swedish Court's receptivity to evidence obtained through foreign legal process.  Stridh Supp. Decl. ¶ 19. My understanding is that the two are relevant for purposes of the Section 1782 analysis, but Mr. Stridh's characterization of my declaration is not correct.

11.      My prior declaration described what the Swedish Tribunal did in this case: it applied the Swedish procedural standard governing compelled production under Chapter 38,

---

[1] In the Swedish original, the word for "follows" is "*följer*" and the word for "shall lie" is the normative "*ska ligga*"—a formulation that in Swedish legislative and judicial usage expresses a general principle rather than a case-specific observation.

Section 2 of the Swedish Code of Judicial Procedure (Sw. *Rättegångsbalken*; "RB"), which is also applied in Swedish arbitrations, and denied specific categories of documents on substantive grounds under that standard. Lüning Decl. ¶¶ 29–31. Under Swedish law, the same procedural framework the Swedish Tribunal applied will govern any discovery requests made in the Swedish Proceeding.

12. Mr. Stridh also places considerable weight on the Swedish Tribunal's observation in its July 25, 2023, discovery order that its decisions "do not exclude that the panel could make a different assessment at a later stage of the process." Stridh Supp. Decl. ¶ 23. That observation was a general qualification entered by the Tribunal. The categories of documents denied then were not subsequently renewed by FourWorld, and the Tribunal did not revisit them. Its rulings on those categories were final for the arbitration. FourWorld did not re-raise any of the denied requests, nor did the Tribunal reconsider them.

13. Mr. Stridh further states that my account of the arbitral discovery record is "incomplete" because I failed to mention that FourWorld's request concerning production of documents handed over to the trustee was refused. *Id.* ¶ 20. But my prior declaration expressly described that category in my full account of FourWorld's prior discovery requests. Lüning Decl. ¶ 27(j). I also attached the full decision of the Tribunal, which found that such a general request to have access to the documentation that the trustee has received or will receive cannot be granted. *Id.*, Ex. 3 at 15. In any event, the refusal of this request for documents provided to the trustee does not change the fact that FourWorld seeks documents through this Application that the Swedish Tribunal already denied.

14. In any event, contrary to Stridh Supp. Decl. ¶ 29, the trustee had access to additional information and had both the opportunity and the professional obligation to use it on behalf of the

4

minority shareholders he represented, whose interests were fully aligned with FourWorld's. Yet he did not choose to do so. The evidentiary record before the Swedish Tribunal included the information available not only to FourWorld but also the trustee and therefore was more complete than Mr. Stridh suggests.

## III.   THE DISCOVERABILITY QUESTION IS SEPARATE FROM THE CONFIDENTIALITY QUESTION

15.   In my prior declaration, I described how the Swedish Tribunal denied certain categories of FourWorld's document requests on substantive grounds. Lüning Decl. ¶¶ 29–30. Mr. Stridh contends that the analysis will be different before the Swedish Court because the Court has confidentiality tools under Chapter 36, Section 2 of the Public Access to Information and Secrecy Act (Sw. Offentlighets- och sekretesslagen; "OSL") that were not available to the Swedish Tribunal. Stridh Supp. Decl. ¶¶ 27–30. That is incorrect. The availability of confidentiality protections against public disclosure does not affect the first-order question of whether the materials are discoverable at all. Those are two different questions.

16.   When the Swedish Court rules on document production requests under Chapter 38, Section 2 RB, it must address two distinct questions in sequence.

  a.   The first is whether the requested materials are discoverable at all. Lüning Decl. ¶¶ 30 and 47; Fitger et al., Commentary on the Swedish Code of Judicial Procedure, Chapter 38, Section 2. This includes the substantive assessment of relevance and materiality, including whether the information requested may contain trade secrets and therefore may be denied or redacted, in part or in full.

  b.   The second question—which arises only after the first is resolved in favor of production—is whether documents to be produced should be subject to confidentiality restrictions limiting their availability *to the public* under the OSL.

That is a different issue, which does not affect the Court's potential assessment of the first question.

17.     The distinction is material because the denials in the arbitration were grounded in the first question, not the second.  The Swedish Tribunal denied the specific categories at issue because they were too peripheral to the proceedings, because they contained trade secrets that outweighed FourWorld's interest in obtaining them, or because disclosure in discovery was not proportionate to the needs of the case.  *Id.* ¶¶ 29–30.  Those were determinations about whether to produce documents to FourWorld at all, not determinations relating to objections about whether produced materials would be accessible to the public.

18.     Mr. Stridh acknowledges that confidentiality in the arbitration "rests on agreement and practice rather than statutory compulsion" and that the parties addressed this through confidentiality undertakings.  Stridh Supp. Decl. ¶ 29.  But his conclusion—that the Swedish Court's availability of OSL confidentiality tools changes the analysis on whether documents should be produced to FourWorld—does not follow.  The OSL tools address *public access* to materials once there is an order to produce; they do not lower the threshold for compelled production as between the parties.  The availability of those tools does not affect the court's assessment of whether the materials meet the requirements for compelled production under Chapter 38, Section 2 RB in the first place.

19.     The arbitration record further illustrates this.  The arbitration was conducted under a confidentiality framework that included not only a confidentiality undertaking between Karo and the trustee, but also a confidentiality undertaking between Karo and FourWorld directly.  Those protections did not prevent the Swedish Tribunal from denying production of certain materials on

6

substantive grounds, including that materials contained trade secrets that Karo could not be compelled to provide to FourWorld.

20.     The availability of comparable protections before the Swedish Court will not change the first-order analysis of whether the materials satisfy the requirements for compelled production, including whether Karo has a justified interest based on trade secrets or otherwise, in not sharing further information with FourWorld.

## IV.     THE AWARD'S FINDINGS DO NOT SUPPORT FURTHER DISCOVERY

21.     Mr. Stridh argues that changed circumstances since the arbitral discovery order make further discovery more likely before the Swedish Court. *Id.* ¶ 31.  The changed circumstance he identifies is the Award itself, in which the Swedish Tribunal found corporate governance failings and characterized the theoretical valuations before it as an "uncertain basis for determining the redemption amount."  From those findings, Mr. Stridh reasons that the materials now sought— bearing on management's financial projections and compensation arrangements—would have assisted the Tribunal and would assist the Swedish Court in the same assessment it is now called upon to make.  *Id.*  That reasoning does not withstand scrutiny for three reasons.

22.     First, the governance findings in the Award were not newly discovered facts.  The conflict of interest of the board and management that Mr. Stridh references was disclosed by Karo Healthcare in connection with the public offer, consistent with the disclosure requirements applicable under the Swedish Takeover Rules.[2]  It was a fact known to the market and the minority shareholders before accepting the offer, and well before the arbitration.  Accordingly, it formed the backdrop against which the Swedish Tribunal's discovery rulings were made.

---

[2]  https://www.karohealthcare.com/karo-pharma-aktiebolag-comments-on-the-public-offer-from-karo-intressenter-ab-and-obtains-a-fairness-opinion/; Stridh. Decl. (D.E. 5), Exs. C–D.

23.     Second, the board conflict and the alleged effect of management's incentive arrangements on the share price were not merely known facts—they were central to FourWorld's case before the Swedish Tribunal.  FourWorld argued these points in the arbitration, and the Tribunal considered and addressed them in the Award.  Stridh Supp. Decl. ¶ 31.  Similarly, FourWorld suggests that the denied discovery requests are more important today, because of information found in, for example, Karo Healthcare's Long Term Plan ("LTP").  Opp. at 14. FourWorld had access to and submitted the LTP to the Swedish Tribunal, so it was a part of the record.  The LTP-related information specifically did not become more important since the arbitration, like FourWorld states, because FourWorld based a significant part of its arbitration case on the importance of the LTP.  Only the Tribunal did not agree.  The Award's findings therefore do not represent a change in the evidentiary landscape.

24.     Third, Mr. Stridh's inference—that the materials now sought "are precisely the materials that would have assisted the tribunal in its assessment"—does not follow from the Tribunal's findings.  *Id.*  Mr. Stridh specifically argues that the Swedish Tribunal's criticism of the valuations submitted as an "uncertain basis for determining the redemption amount" implies that more documents of the kind now sought would have resolved that uncertainty in FourWorld's favor.  *Id.*  The Tribunal's skepticism was not a finding that FourWorld lacked sufficient materials. It reflected the well-established principle in Swedish compulsory redemption proceedings that theoretical valuations are generally considered weaker evidence than actual market transactions. That is a finding about evidentiary reliability, not a finding that the record was incomplete in ways that additional document production would have cured.

## V.   THE RELEVANCE OF EVIDENCE ARISING AFTER THE VALUATION DATE IN 2022

25.     Mr. Stridh asserts that documents purportedly held by KKR—generated in connection with the 2025 acquisition of Karo Healthcare—are relevant to the Swedish Proceedings because they may have bearing on the value of Karo Healthcare shares as of the statutory valuation date of September 26, 2022. *Id.* ¶¶ 15, 18.  I clarify below why they are not relevant.

26.     As a threshold matter, Mr. Stridh states that the Application is directed at materials that "are, at least to some extent, held only by KKR, not by Karo or EQT." *Id.* ¶ 34.  Mr. Stridh thereby concedes that at least *some* materials FourWorld seeks are held by Karo and/or EQT—two Swedish entities within the Swedish Court's jurisdiction.  Any due diligence materials purportedly received during the acquisition process originated with Karo and EQT and were created or held by those entities before being provided in connection with the controlled sales process.  They remain available from Swedish entities that are within the Swedish Court's power to compel.  To the extent FourWorld seeks materials beyond those—namely, documents generated as part of a proprietary analysis of Karo Healthcare's value in 2025—such documents, even if they exist, would not be relevant for the reasons set forth below.

27.     First, on the relevance of the 2025 transaction documents, the statutory standard is clear.  Chapter 22, Section 2 of the Swedish Companies Act requires that the redemption price be determined by taking into consideration the circumstances at the time a request for arbitration was made.  Lüning Decl. ¶ 16.  In this case, the arbitration request was made on September 26, 2022, which is the operative valuation date.  The statute permits consideration of an *earlier* time if justified but does not reference circumstances arising after the arbitration date.  *Id.*  The 2025 acquisition reflects market conditions, buyer characteristics, transaction structures, financing arrangements, and business developments that differ materially from those existing on September

26, 2022.  *Id.* ¶ 25.  This is not merely a question of what weight the court should assign to the 2025 transaction evidence; it is a question of what the statutory framework treats as the relevant universe of circumstances. To the extent that FourWorld seeks only the underlying materials provided by Karo and reviewed and considered in connection with the 2025 acquisition of Karo Healthcare, they can seek those from Karo itself.

28.    Second, Mr. Stridh's argument that KKR's acquisition due diligence "necessarily reflects and draws upon information concerning Karo Healthcare's historical financial position, earnings trajectory, and value drivers" is speculative.  Stridh Supp. Decl. ¶ 15.  A due diligence exercise conducted in 2025 in connection with a proposed acquisition would inevitably focus on the company's then-current position and forward-looking prospects as understood at the time of the acquisition.  It would reflect three more years of business development, evolving market conditions, management actions, and strategic changes that occurred after the 2022 valuation date. To characterize the output of that exercise as probative of the company's value as it stood in September 2022 requires a chain of inferences that the statutory framework does not contemplate and that the Swedish Tribunal's approach to the valuation evidence does not support.

29.    Third, Mr. Stridh invokes the academic commentary of Professor Gustaf Sjöberg in support of the proposition that information arising after the valuation date may be taken into account by the Swedish Court.  *Id.* ¶ 17, Ex. B.  That commentary does not support Mr. Stridh's conclusion.   Professor Sjöberg carefully distinguishes between two categories: "factual circumstances" (Sw. *sakförhållanden*)—actual events or developments after the valuation date— and "information about factual circumstances" (Sw. *information om sakförhållanden*)— information that illuminates conditions that already existed at the valuation date.  The former are not to be taken into account because, in Professor Sjöberg's analysis, giving weight to them would

10

in effect alter the object of valuation.  The latter may, under certain circumstances, be considered because they shed light on circumstances that were already present on or around the valuation date.

30.     The 2025 transaction price, and the due diligence materials generated in connection with a 2025 acquisition conducted under 2025 market conditions, constitute actual events occurring years after the valuation date.  They are the "factual circumstances" that Professor Sjöberg describes, not "information about factual circumstances."

31.     Mr. Stridh's observation that there is a distinction between receptivity and weight does not resolve the issue either.  *Id.* ¶ 13.  The statutory valuation-date standard defines the legally relevant universe of circumstances for the court's assessment.  It is not merely a factor that goes to the weight.   Evidence that reflects post-valuation-date events is not legally useful or procedurally appropriate because the Swedish Court might formally receive it (or, at minimum, not block its admission).  Mr. Stridh has identified no basis on which documents relating to a 2025 acquisition would satisfy the requirements for compelled production under Chapter 38, Section 2 RB in proceedings concerning a 2022 valuation.

32.     Mr. Stridh's description of the Swedish Court's receptivity of evidence is also incomplete.  While the general principle of freedom to adduce evidence is broad, it is not unlimited.  Under Chapter 35, Section 7 RB, the court shall reject any proof if it finds that a circumstance that a party offers to prove is without importance in the case, or that an item of evidence offered is unnecessary or evidently should be of no effect.  Most of the documents FourWorld seeks from KKR in relation to the 2025 acquisition are likely of no effect to the valuation of Karo Healthcare in 2022.

11

33.     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Executed on May 22, 2026, in Stockholm, Sweden.

/s/ Rasmus Lüning
Rasmus Lüning