## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re Application of<br><br>FourWorld Event Opportunities LP,<br><br>Petitioner, for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding. | Case No. 1:25-cv-01457-MN |

**KKR & CO. INC.'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO VACATE THE COURT'S *EX PARTE* ORDER AUTHORIZING DISCOVERY PURSUANT TO 28 U.S.C. § 1782 OR, IN THE ALTERNATIVE, <u>TO QUASH PETITIONER'S SUBPOENA</u>**

OF COUNSEL:
(admitted *pro hac vice*)

Edward M. Mullins (FL Bar No. 863920)
Felipe Berer (D.C. Bar No. 492352)
Reed Smith LLP
200 South Biscayne Blvd, Suite 2600
Miami, FL 33131
(786) 747-0200
Email: emullins@reedsmith.com
Email: fberer@reedsmith.com

**REED SMITH LLP**

Justin M. Forcier (No. 6155)
1201 North Market Street, Suite 1500
Wilmington, DE 19801
(302) 778-7500
Email: jforcier@reedsmith.com

*Counsel for Respondent KKR & Co. Inc.*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................1

ARGUMENT .........................................................................................................................1

I.      FourWorld Fails to Address KKR's Holding Company Status .....................................1

II.     FourWorld's Breadth, Burden, and Relevance Arguments Fail ...................................3

III.    FourWorld's Proposed Document Collection Protocol Is Itself Overbroad..................7

IV.     Confidentiality and Cost Concerns Favor Quashing the Subpoena...............................9

V.      Trimming or Narrowing FourWorld's Requests is an Inadequate Remedy ................10

## TABLE OF AUTHORITIES

**Cases**                                                                                                                    **Page(s)**

*507 Summit LLC v. Balance L. PLLC*,
   2026 WL 972452 (S.D.N.Y. Apr. 10, 2026)................................................................................2, 3, 9

*In re Ex Parte Application of FourWorld Event Opportunities Fund L.P.*,
   Case No. 1:22-mc-00316-KPF (Transcript) .................................................................6, 7, 9

*Associacão dos Profissionais dos Correios v. Bank of N.Y. Melon Corp.*,
   2022 WL 4955312 (S.D.N.Y. Oct. 4, 2022) ........................................................................4

*Banoka S.à.r.l., ATYS S.A. v. Elliott Mgmt. Corp.*,
   148 F.4th 54 (2d Cir. 2025) ................................................................................................2

*In re del Valle Ruiz*,
   939 F.3d 520 (2d Cir. 2019)................................................................................................2

*In re Lazaridis*,
   865 F. Supp. 2d 521 (D.N.J. 2011) .....................................................................................6

*In re O'Keeffe*,
   646 F. App'x 263 (3d Cir. 2016)........................................................................................6

*In re Selman*,
   2024 WL 1092025 (D. Del. Mar. 13, 2024) .......................................................................3

**Rules**

Fed. R. Civ. P. 26(b)(2)(C)(i) ...................................................................................................6

Fed. R. Civ. P. 45(d)(3)(B)(i) ...................................................................................................9

**INTRODUCTION**

FourWorld improperly uses this action as a means to seek discovery from parties to the underlying Swedish Proceeding or those within the reach of the Swedish Court.  The Order granting discovery in this case should be vacated, or FourWorld's Subpoena should be quashed, for all the reasons set forth in Karo's submissions, which KKR joins, as well as the fact that the Subpoena is overbroad and unduly burdensome.[1]

**ARGUMENT**

### I.   FourWorld Fails to Address KKR's Holding Company Status

FourWorld spends Section D(i) of its Answering Brief focused on issues KKR does not contest.  In so doing, FourWorld wholly fails to substantively address the policy arguments KKR raises in pages 9–10 of its Opening Brief, instead making the conclusory and self-serving assertion that "KKR's status as a holding company is not the relevant inquiry."  A.B. at 19.

FourWorld's failure to address KKR's arguments regarding its holding company status is unsurprising given that the basic facts of this case demonstrate that KKR itself is attenuated from the 2025 Transaction, and both the 2025 Transaction and the 2022 acquisition at issue in the Swedish Proceeding have virtually no relation to this District or indeed to this country.[2] Fundamentally, while KKR's status as a holding company does not present a statutory bar to discovery, to require KKR to produce documents under the specific facts and circumstances of this case imposes an undue burden upon it and is inconsistent with the policy goals underpinning Section 1782.  *See* KKR's O.B. at 9–10.  And, courts have reasoned that a court

---

[1] Capitalized terms not defined herein have the same meaning as those contained in KKR's Opening Brief (D.I. 30).  "A.B." refers to FourWorld's *Memorandum of Law in Opposition to KKR & Co.'s Motion to Vacate and Karo Intressenter AB's Motion for a Stay* (D.I. 38).

[2] KKR had *no involvement* with the 2022 acquisition at issue in the Swedish Proceeding, which occurred three years prior to the 2025 Transaction; Karo was acquired by an entity indirectly owned by investment funds and vehicles that are managed by an indirect subsidiary of KKR; there are no officers or directors at KKR with the requisite knowledge to provide testimony responsive to the Subpoena; and the 2025 Transaction was almost entirely handled in Europe by European personnel.  *See* KKR's O.B. at 4, 9–10; Lee Dec. ¶¶ 7–10, 12.

considering a Section 1782 application can, and should, consider the location of the documents sought when deciding whether to exercise its discretion to authorize discovery. This principle was highlighted by the Second Circuit in *In re del Valle Ruiz*, 939 F.3d 520, 533 (2d Cir. 2019), which KKR cited it its Opening Brief and which FourWorld ignores. *See Banoka S.à.r.l., ATYS S.A. v. Elliott Mgmt. Corp.*, 148 F.4th 54, 70 (2d Cir. 2025) (while the respondents "had the practical ability to access the Elliott U.K. documents it seeks through shared servers," court properly "considered the foreign location of the documents and the foreign status of their 'primary custodian' under the fourth *Intel* factor" in denying application) (citation omitted). "[T]o do otherwise would 'effectively collapse[] corporate separations and incentivize[] companies to maintain segregated computer systems.'" *Id.* (citation omitted).

The record demonstrates that FourWorld can pursue the discovery it seeks in Sweden against parties within the Swedish Court's jurisdictional reach without burdening a publicly-traded Delaware holding company with no operations or employees, and this Court should exercise its discretion in making it do so, just as the Southern District of New York did when FourWorld last attempted to obtain Section 1782 discovery for use in a Swedish proceeding. *See also 507 Summit LLC v. Balance L. PLLC,* 2026 WL 972452, at *4 (S.D.N.Y. Apr. 10, 2026) (burden imposed significant when respondent had no alleged involvement in the underlying transaction at issue, no financial interest in its outcome, and "no role as a percipient actor in the events under valuation," and "is underscored when there may be more natural sources for the same information that have not been meaningfully ruled out").

FourWorld, in attempting to avoid the reality that it can obtain any truly relevant or necessary information in Sweden without burdening KKR, points to "KKR's own internal valuations of Karo Healthcare" as an example of "KKR … indisputably possess[ing] relevant documents not in the possession of any party to Swedish Proceeding[.]" A.B. at 20. Yet, FourWorld's own proposed protocol—which it relies upon throughout its Answering Brief to

support its positions—explicitly and properly excludes KKR's internal valuations and analyses. Similarly, in addressing certain of Karo's arguments, FourWorld points to KKR's due diligence of Karo Healthcare and its internal communications as documents that only KKR possesses. A.B. at 11. But, again, FourWorld's protocol excludes internal communications—as it should. Information post-dating Karo's 2022 acquisition of Karo Healthcare, as explained in KKR's and Karo's submissions, is ultimately irrelevant. Thus, KKR's internal materials are *not* truly relevant to or necessary in Swedish Proceeding, and KKR does *not* possess anything that is genuinely relevant or necessary that FourWorld cannot obtain in Sweden.[3]

FourWorld cannot have it both ways—it cannot rely upon KKR's internal materials to argue that discovery against KKR in this District is necessary and then turn around and disclaim any need for much of the same to argue that its requests are not unduly burdensome and unnecessary. Its positions are untenable and contradictory. Moreover, even if KKR's internal valuations or due diligence materials were relevant or necessary, they contain highly confidential, sensitive, and proprietary information, the disclosure of which would materially harm KKR. *See* KKR's O.B. at 16; Lee Dec. ¶ 11.

## II. FourWorld's Breadth, Burden, and Relevance Arguments Fail

FourWorld characterizes KKR's burden arguments, set forth in detail in KKR's Opening Brief, as "hypothetical" and "untested." A.B. at 20. FourWorld is wrong again. Courts in this District *have* held that requests for "all documents" and "all communications" are overbroad or otherwise not narrowly tailored, particularly when, as here, the requests span an unreasonable time period and seek irrelevant information. *See, e.g.*, *In re Selman*, 2024 WL 1092025, at *9 (D. Del. Mar. 13, 2024).

FourWorld argues that the opinions KKR cites in its Opening Brief, such as *Palladian*

---

[3] *See 507 Summit*, 2026 WL 972452, at *4 ("The failure to pursue or explain the unavailability of less burdensome sources for the information sought in the subpoena also weighs against compelling production[.]").

*Partners* and *Associacão dos Profissionais dos Correios*, are inapposite. A.B. at 21. These opinions stand the basic proposition that a subpoena overbroad temporally and in scope is improper. *See* KKR's O.B. at 10. For the reasons discussed herein and in KKR's Opening Brief, the Subpoena *is* facially overbroad—FourWorld requests information going back eight years despite that: (i) the Swedish Proceeding concerns a 2022 acquisition and the adequacy of an offer price Karo extended that same year; and (ii) the 2025 Transaction did not occur until three years later after the Swedish Proceeding was already underway. *See id.* at 9–10.

FourWorld's attempts to distinguish *Palladian* and *Associacão* fail. The court in *Associacão* denied the petitioner's Section 1782 application partly because the petitioner failed to "explain how the requests are tailored to the claims and defenses or proportional to the needs of the case[,]" and "the time period for which documents [were] requested extend[ed] far beyond" the relevant time period. *Associacão dos Profissionais dos Correios v. Bank of N.Y. Melon Corp.*, 2022 WL 4955312, at *8 (S.D.N.Y. Oct. 4, 2022). Contrary to FourWorld's arguments, the same is true here. Rather than substantively addressing KKR's arguments concerning FourWorld's failure to adequately explain the relevance or its need for the production of the requested materials from KKR, *see* KKR's O.B. at 12–13, FourWorld essentially parrots the same conclusory statements it made in its initial Memorandum of Law; namely, that the "discovery sought is narrowly tailored to the issues pending in the" Swedish Proceeding. A.B. at 22; *see also* FourWorld's Memo. at 15.

FourWorld's requests undercut this claim. Only one of its eleven topics and requests references documents and communications concerning EQT's 2022 acquisition of a controlling interest in Karo Healthcare specifically. *See* KKR's O.B. at 12. And, the fact that the Swedish Proceeding already was underway before the 2025 Transaction occurred demonstrates that nothing in KKR's unique possession regarding that transaction is relevant or necessary to FourWorld's prosecution of the Swedish Proceeding such that KKR should be subject to wide-

- 4 -

ranging discovery in connection therewith.  *See id.* at 12–13.  FourWorld obviously had all the information it needed to file the Swedish Proceeding before KKR ever came into the picture.

FourWorld nonetheless claims that "KKR's temporal objections are … misguided," and that "[t]here is nothing restricting the Swedish Court from taking into account the actual performance of Karo Healthcare following the at-issue transaction."  A.B. at 22.  But as Karo has explained, information post-dating Karo's 2022 acquisition of Karo Healthcare is irrelevant to valuation at that time.  *See* Luning Dec. ¶¶ 16, 25; Suppl. Luning Dec. ¶¶ 25–32 (explaining why documents generated in connection with the 2025 Transaction "are not relevant.").[4]

Even if this was not the case, FourWorld has not even attempted to explain how or why it requires information from KKR *going back eight years*, when the transaction at issue in the Swedish Proceeding occurred in 2022 and the 2025 Transaction did not occur until three years later in 2025.  *See* KKR's O.B. at 10–11.  The applicable section of FourWorld's Answering Brief focuses almost entirely on the performance of Karo Healthcare "following the at-issue transaction" (despite the sworn affidavits concerning Swedish law described herein), not FourWorld's purported need for documents going back eight years.   A.B. at 22.

FourWorld likewise fails to explain why it cannot obtain information from other sources; here, parties within the Swedish Court's reach.[5]  FourWorld instead merely argues that "[t]here is … nothing requiring [FourWorld] from first seeking similar discovery from the parties to the Swedish Action, before seeking discovery from KKR."  A.B. at 22.  While it is

---

[4] Even FourWorld's *own* expert admits that "[i]t is correct that the standard for compulsory redemption proceedings, as a main rule, requires the purchase price to be determined 'taking into consideration *the circumstances pertaining at the time a request for arbitration was made*' (in this case, *26 September 2022*)"; and describes as a "fact" that the Swedish Court "will not, as a main rule, value *circumstances that arose after the relevant date*[.]"  Suppl. Stridh Dec. ¶¶ 14, 18 (emphasis added).  The 2025 Transaction concerns "circumstances that arose after the relevant date," September 2022.  Suppl. Luning Dec. ¶ 27 (2025 acquisition reflects market conditions and business developments materially different from those in 2022).

[5] Except KKR's own internal analyses and valuations, which FourWorld itself proposes excluding in its protocol, or internal materials post-dating the relevant time period.

true that exhaustion is not required under third *Intel* factor, *In re O'Keeffe*, 646 F. App'x 263, 268 (3d Cir. 2016), it is not dispositive. Decisions such as *In re Lazaridis,* 865 F. Supp. 2d 521, 528 (D.N.J. 2011), make clear that a party's inability to show that it cannot obtain information from other sources without imposing a burden on the domestic, non-party discovery target is probative of undue burden.

FourWorld attempts to distinguish *Lazaridis* by arguing that "the discovery sought in the Subpoena cannot be found from general internet searches[,]" A.B. at 23, but that is not the standard. It would clearly be far more proper, equitable, and less burdensome on KKR (a Delaware holding company based in New York with no operations or employees, which is very attenuated from the 2025 Transaction and has no officers or directors with the requisite knowledge to provide testimony responsive to the Subpoena (KKR's O.B. at 9–10)), for FourWorld to seek discovery from parties subject to the Swedish Court's jurisdiction. FourWorld should not use Section 1782 to end-run the Swedish discovery process and burden a foreign non-party. *See* Fed. R. Civ. P. 26(b)(2)(C)(i).

The last time a FourWorld entity attempted to obtain discovery for use in a Swedish valuation proceeding before the Stockholm District Court, the Southern District of New York quashed its subpoenas in part on the basis that the respondent was "not the real target of the requested discovery," but instead "merely a vehicle through which [FourWorld] seeks" discovery from parties to the foreign proceeding or those "within the reach of the Stockholm District Court," and FourWorld was "seeking exactly the same discovery that is available to the Stockholm District Court from the parties before that court or within its jurisdiction[.]" *In re Ex Parte Application of FourWorld Event Opportunities Fund L.P.*, Case No. 1:22-mc-00316-KPF (Transcript) (D.I. 32), at 19:21–24, 21:4–9, 22:16–19.

Here, like there, the record demonstrates that FourWorld is using KKR as a vehicle through which to obtain discovery from EQT and Karo, both of which are within the Swedish

Court's reach.  To reiterate Karo's succinct explanation, "[t]here is no document that KKR could possess about the 2022 EQT transaction that Karo or EQT does not also possess."  Karo's Motion to Vacate at 15; *see also* KKR's O.B. at 13–15; Suppl. Luning Dec. ¶ 27.

FourWorld attempts to distinguish its prior unsuccessful Section 1782 action on bases that ultimately do not matter.  FourWorld points out that in its prior application, the Section 1782 subpoena was served on a board member of a non-party parent entity.  A.B. at 23. FourWorld asserts that the "Section 1782 petition was denied because the outside board member was not independently in possession of the material sought."  *Id.*  FourWorld cherry-picks details.  While the respondent there was differently situated from KKR here, both respondents are attenuated from the underlying Swedish proceedings.  And the court's holding was not nearly as limited as FourWorld suggests—the court there considered at length whether the actual discovery targets and discovery sought were within the reach of the Swedish Court (there, as here, that was the case; *see FourWorld*, Case No. 1:22-mc-00316-KPF (Transcript), at 19–21, and further considered whether FourWorld's subpoena was unduly burdensome (there, as here, it was; *see id.* at 30–32).  That decision *is* closely analogous to the circumstances here, concerns a near-identical Swedish proceeding, and clearly counsels in favor of quashing FourWorld's Subpoena and vacating the Court's Order.

## III.  FourWorld's Proposed Document Collection Protocol Is Itself Overbroad

FourWorld repeatedly relies upon its proposed document collection protocol attached as Exhibit A to the Supplemental Declaration of Fletcher W. Strong (D.I. 39-1) to argue that its Subpoena is not unduly burdensome and that any undue burden can be sufficiently mitigated.  FourWorld asserts that "KKR ignored [FourWorld's] inquiries and simply filed" its Motion to Vacate. A.B. at 19.  FourWorld also claims that, while it "remains willing to engage with KKR to address any continuing burden concerns," its proposed protocol "already addressed such concerns." *Id.*

FourWorld is incorrect. FourWorld's protocol arrived on the heels of discussions between FourWorld's and KKR's counsel concerning a potential narrowing of the discovery FourWorld seeks and a settlement of the present action. KKR considered FourWorld's protocol but filed its Motion to Vacate because, as KKR discussed in its Opening Brief, while the protocol assuaged some of KKR's concerns (for example, by offering to exclude KKR's internal valuations and analyses) it remains overbroad and unduly burdensome. Yet, FourWorld uses the protocol as a shield and a sword. In the same breath of offering to exclude internal evaluations, FourWorld argues they are "directly relevant" to the Swedish Proceeding and points to them in arguing that "KKR ... indisputably possesses relevant documents not in the possession of any party to the Swedish Proceeding[.]" A.B. at 20.

Even excluding the internal materials, FourWorld's proposed protocol fails to suggest actual search terms, thus rendering it vague and unworkable in addition to overly broad and unduly burdensome. While it purports to exclude "KKR's internal valuations, business plans, projections, and analyses," it seeks wide-ranging categories of documents unlimited in time, several of which seek documents plainly in the possession of parties to the Swedish Proceeding, including Karo. Suppl. Strong Dec. Ex. A. The protocol seeks, for example, "[a]ll *Karo* board books/meeting minutes/agendas/calendars for board meetings, including those meetings held by KKR," without subject limitation (emphasis added); "[t]hird party valuations, business plans, projections, and analyses" (which would necessarily include EQT's and Karo's valuations and analyses); "[d]ocuments related to equity/employee incentive program [sic] for *Karo* employees and executives" (emphasis added); and other facially vague, overbroad, and/or irrelevant requests, such as "[d]ocuments related to the financing for KKR's acquisition of Karo" and "[t]hird party reports or analyses on Karo provided to KKR[.]" *Id.*

Similarly, while FourWorld proposes an "external" email search, the five purported "KKR Custodians" FourWorld lists are located in Europe, which presents burden issues to

KKR. *See* KKR's O.B. at 17–19. Moreover, FourWorld proposes that KKR produce external emails between the aforementioned "KKR Custodians" and *various EQT and Karo employees*. To reiterate: (i) EQT is based in Sweden, and it and its affiliates owned Karo Healthcare prior to the 2025 Transaction (*see* KKR's O.B. at 13 n.8, 14); (ii) Karo, a party to the Swedish Proceeding, owns Karo Healthcare (*see id.* at 1 n.1; Luning Dec. ¶ 23); and (iii) FourWorld can request discovery against both Karo and EQT in the Swedish Proceeding (*see* KKR's O.B. at 13 n.8; Karo's Motion to Stay or Vacate at 9; Luning Dec. ¶ 45).

Not only is FourWorld's protocol unduly burdensome; it evidences, as KKR and Karo have argued, that FourWorld's Subpoena represents nothing more than an attempt to use Section 1782 to circumvent the Swedish discovery process and, consistent with its failed Section 1782 application in the Southern District of New York, impermissibly use KKR as "a vehicle through which" to seek discovery from parties to the Swedish Proceeding or those "within the reach of the Stockholm District Court[.]" *FourWorld*, Case No. 1:22-mc-00316-KPF (Transcript), at 19:21–24, 21:4–9. FourWorld's protocol undermines its positions.

## IV.  Confidentiality and Cost Concerns Favor Quashing the Subpoena

FourWorld's rebuttals to KKR's confidentiality and cost arguments, A.B. at 24, are misguided. Complying with FourWorld's subpoena would require KKR to produce highly confidential and sensitive materials, the disclosure of which would harm KKR. *See* KKR's O.B. at 15–16; Lee Dec. ¶ 11. Under Fed. R. Civ. P. 45(d)(3)(B)(i), this Court can and should quash FourWorld's subpoena on the basis that it seeks confidential information. Swedish law may not adequately protect its confidential information. *See* KKR's O.B. at 16–17; Luning Dec. ¶ 24. FourWorld does not even attempt to address the fact that KKR received diligence documents from Karo and EQT under a confidentiality agreement, Luning Dec. ¶ 24, and producing those documents could risk violating the same. *See* KKR's O.B. at 16–17. Confidentiality issues, then, strongly favor quashing FourWorld's Subpoena. *507 Summit*,

2026 WL 972452, at *3 ("Section 1782 should not be used as a workaround to evade protective-order restrictions and thereby discourage foreign clients from producing documents to U.S. counsel even under court-ordered confidentiality protections.").

Cost issues also weigh in favor of quashing. FourWorld merely points out that GDPR costs are not dispositive and alleges that "KKR has not articulated how the burden that would be imposed on it is disproportionate to the needs of" the Swedish Proceeding. A.B. at 24. KKR never claimed that GDPR costs are dispositive; rather, they compound the burden occasioned by FourWorld's requested discovery. KKR's O.B. at 18; Lee Dec. ¶ 13. And *any* burden imposed upon KKR in this case is disproportionate to the needs of the Swedish Proceeding for all the reasons discussed.[6] In addition, FourWorld's focus on the number of requests and topics is misguided—overbreadth and undue burden are necessarily fact-dependent inquiries and requests and topics can be unduly burdensome independent of their mere quantity.

## V. Trimming or Narrowing FourWorld's Requests is an Inadequate Remedy

Finally, narrowing FourWorld's requests is not an adequate remedy for the reasons discussed, *see* KKR's O.B. at 20, and this Court need not do so. Narrowing will not cure the fundamental deficiencies in FourWorld's Section 1782 application and the Subpoena in particular: the Subpoena seeks discovery that (i) is irrelevant; (ii) is located abroad; and (iii) can and should be obtained from parties within the Swedish Court's jurisdictional reach, rather than from KKR, a holding company with no operations or employees and which had no involvement in the transaction at issue in the Swedish Proceeding. The burden to KKR, weighed against the lack of a showing of actual need or relevance of the information sought, coupled with the deficiencies raised by KKR and Karo, counsel vacating this Court's Order.

---

[6] FourWorld fails to address the burden imposed on KKR by collecting, reviewing, and producing the documents requested and ensuring compliance with data protection laws, relevance and privilege. KKR's O.B. at 18–19; Lee Dec. ¶ 14. FourWorld also does not contest that it should assume the costs of KKR's production as well as indemnify KKR against any potential breaches of European data privacy laws. KKR's O.B. at 18.

Dated: May 22, 2026

OF COUNSEL:
(admitted *pro hac vice*)

Edward M. Mullins
Felipe Berer
Reed Smith LLP
200 South Biscayne Blvd, Suite 2600
Miami, FL 33131
(786) 747-0200
Email: emullins@reedsmith.com
Email: fberer@reedsmith.com

Respectfully submitted,

**REED SMITH LLP**

*/s/ Justin M. Forcier*
Justin M. Forcier (No. 6155)
1201 North Market Street, Suite 1500
Wilmington, DE 19801
(302) 778-7500
Email: jforcier@reedsmith.com

*Counsel for Respondent KKR & Co. Inc.*

- 11 -